Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| HIRAM TORRES MONTALVO, en su carácter como Secretario Designado del DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (Astrid Michelle Ramírez Varela)<br><br>Demandante-Apelado<br><br>Vs.<br><br>CONSORCIO INVERSIONISTA AUTOMOTRIZ, INC.<br><br>Demandado-Apelante | KLAN202300509 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil. Núm. SJ2023CV02110<br><br>SALA: 904<br><br>Sobre: SOLICITUD PARA HACER CUMPLIR ORDEN<br><br>Daco Núm. SAN-2020-0006617 |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Santiago Calderón y la Jueza Álvarez Esnard.

**Hernández Sánchez, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de julio de 2023.

El 12 de junio de 2023, el Consorcio Inversionista Automotriz, Inc. (Consorcio o apelante) compareció ante nos mediante *Apelación* y solicitó la revocación de la *Sentencia* dictada y notificada el 21 de abril de 2023 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario). Por virtud del aludido dictamen, el TPI determinó que el apelante incumplió con una *Resolución* emitida por el Departamento de Asuntos de Consumidor (DACo o agencia).

Por los fundamentos que expondremos a continuación, **revocamos** el dictamen apelado.

**I.**

El 8 de marzo de 2023, el DACo presentó una *Petición Para Hacer Cumplir Orden.*[1] Mediante esta, alegó que la agencia atendió una querella instada por Astrid Michelle Ramírez Valera (señora

---
[1] Véase el Apéndice 1, págs. 1-3.

Ramírez), en contra del Consorcio, Hyundai de Cayey y Oriental Bank. En la mencionada querella, la señora Ramírez le solicitó al Consorcio "que saldara la deuda del vehículo entregado en "trade in" y se eliminara la información negativa de su historial de crédito".[2] Consiguientemente, el pleito administrativo siguió su tracto ordinario hasta que el 30 de marzo de 2021, el DACo dictó una *Resolución* en la cual determinó lo siguiente:

> Se declara Ha Lugar la presente querella.
>
> En un término de veinte (20) días contados a partir del archivo en autos de la presente Resolución, la parte querellada Consorcio Inversionista Automotriz, Inc. deberá llevar a cabo las gestiones para las agencias de informe de crédito corrijan la información adversa del historial de crédito de la querellante. La parte querellante deberá brindar toda la cooperación e información solicitada. Una vez completadas las gestiones, se concede un término de noventa (90) días para que las agencias corrijan la información negativa correspondiente al préstamo de Oriental Bank del Nissan Sentra. Si transcurren los noventa (90) días sin que las agencias de informes de crédito hayan corregido la información, la parte querellada deberá pagar a la querellante la suma de $15,000.00.[3]

Así las cosas, la agencia recurrió al TPI para hacer valer su dictamen ya que, a pesar de haber concedido un término para su cumplimiento, su orden no ha sido acatada por el apelante. En vista de lo anterior, le solicitó al foro primario a que emitiera una sentencia disponiendo el cumplimiento de la *Resolución* administrativa y le impusiera al Consorcio la suma de quinientos dólares ($500.00) por concepto de honorarios de abogados.

Consecuentemente, el 10 de marzo de 2023, el TPI dictó una *Orden de Mostrar Causa*.[4] En esta, se le concedió un término de diez (10) días al apelante para que mostrara causa por la cual no se le debía dictar sentencia en su contra por el incumplimiento de la *Resolucíon* dictada por el DACo. Posteriormente, el 10 de abril de

---

[2] Íd. pág. 4.
[3] Íd. pág. 7.
[4] Véase el Apéndice 2, pág. 12.

2023, el foro primario le concedió a la agencia un término final de cinco (5) días para presentar el diligenciamiento de la *Orden de Mostrar Causa*.[5] En cumplimiento con ello, el 17 de abril de 2023, la agencia presentó una *Moción Presentado Orden de Mostrar Causa Diligenciada*.[6] Junto a esta, anejó el documento de diligenciamiento debidamente juramentado en cual constaba que la fecha del diligenciamiento de la orden se hizo el 11 de abril de 2023.[7] Así pues, el 21 de abril de 2023, el TPI emitió una *Sentencia*. Por virtud de este dictamen, el foro primario determinó lo que sigue:

> La Orden fue diligenciada al peticionado. Habiendo transcurrido el término para mostrar causa por la cual no debíamos dictar la correspondiente Sentencia, procedemos a resolver. Conforme a lo advertido y en vista de su incomparecencia, este Tribunal procede a dictar Sentencia declarando HA LUGAR la Petición. Por lo que se acoge y confirma la Resolución emitida por DACO.[8]

No obstante, ese mismo día, el Consorcio presentó una *Moción Solicitando Reconsideración Asumiendo Representación Legal y Solicitando Término para Presentar Posición sobre Orden Demostrar Causa*.[9] En síntesis, esbozó que el TPI dictó su sentencia previa a que venciera el término de los diez (10) días otorgados por el propio tribunal. En ese sentido, puntualizó que no se podía resolver que hubo incomparecencia de su parte toda vez, aun no se ha vencido el término para comparecer. Examinada esta moción, el 24 de abril de 2023, el TPI emitió una *Orden* en la cual le concedió al Consorcio hasta el 26 de abril de 2023 para que mostrara su postura.[10] Oportunamente, el 26 de abril de 2023, el apelante presentó una *Moción en Cumplimiento de Orden y de Mostrar Causa*.[11] En esencia, sostuvo que el Consorcio había hecho las gestiones de arreglar el

---

[5] Véase el Apéndice 3, pág. 14.
[6] Véase el Apéndice 4, pág. 15.
[7] Íd., pág. 18.
[8] Véase el Apéndice 6, pág. 20.
[9] Véase el Apéndice 7, pág. 21.
[10] Véase el Apéndice 8, pág. 23.
[11] Véase el Apéndice 9, pág. 24.

historial crediticio de la señora Ramírez con una de las agencias de crédito desde el 27 de abril de 2021. Asimismo, planteó que el 1 de julio de 2021, se realizó otro trámite ante las agencias crediticias. Esbozó que ha tratado de comunicarse con la señora Ramírez para saber el estatus de su historial de crédito, pero que los intentos han sido infructuosos. Ante esto, le solicitó al TPI que no concediera la petición del DACo.

Evaluado estos argumentos, el foro primario realizó la siguiente determinación: "[e]nterado. En vista de que, a la fecha de haber dictado Sentencia, la Resolución del DACO no había sido cumplida, se mantiene la Sentencia emitida".[12]

Inconforme con el resultado anteriormente reseñado, el 11 de mayo de 2023, el Consorcio presentó una *Moción de Reconsideración y Solicitando la Celebración de una Vista Evidenciaría*.[13] En resumen, planteó que en la petición del DACo no surge un reporte de crédito actualizado de la señora Ramírez o prueba documental que acredite el alegado incumplimiento de la resolución. Cabe aclarar que esta moción de reconsideración se distingue de aquella que presentó el apelante anteriormente el 21 de abril de 2023. En la primera, el Consorcio recurre de una determinación de incomparecencia. En la reconsideración del 11 de mayo de 2023, recurre del dictamen del TPI en cuanto al incumplimiento de la *Resolución* del DACo.

Examinados los planteamientos del apelante, el 12 de mayo de 2023, el TPI emitió una *Resolución* declarando No Ha Lugar la reconsideración.[14]

Aun insatisfecho, el Consorcio acudió ante nos el 12 de junio de 2023, y formuló los siguientes señalamientos de error:

---

[12] Véase el Apéndice 10, pág. 40.
[13] Véase el Apéndice 11, pág. 41.
[14] Véase el Apéndice 12, pág. 46.

**Primer Error Señalado: Erró el Tribunal de Primera Instancia al determinar que el Consorcio Inversionista incumplió la Resolución Administrativa dictada por DACO.**

**Segundo Error Señalado: Erró el Tribunal de Primera Instancia al dictar Sentencia sin la celebración de una vista evidenciaria.**

**Tercer Error Señalado: Erró el Tribunal de Primera Instancia a dictar Sentencia en violación a la garantías mínimas a un debido proceso de ley.**

Atendido el recurso, el 14 de junio de 2023, emitimos una Resolución en la cual le concedimos hasta el 12 de julio de 2023 a la parte apelada para presentar su alegato. En cumplimiento con nuestra orden, el 17 de julio de 2023, compareció el DACo. Con el beneficio de la comparecencia de las partes, procedemos a resolver el recurso que está ante nuestra consideración.

**II.**

-A-

La Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 de 23 de abril de 1973, 3 LPRA secs. 341 *et seq.*, (Ley Núm. 5) le otorga la facultad al Secretario del DACo (Secretario) para resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía. Igualmente, la aludida legislación le concede al Secretario la facultad para conceder los remedios que sean procedentes conforme al derecho aplicable así como la la potestad a interponer cualquier remedio legal que sea necesario para hacer efectivo los propósitos de la ley. En ese sentido, el Secretario podrá presentar cualquier petición para hacer cumplir una orden del DACo, en la Sala del Tribunal de Justicia correspondiente a la Oficina Regional del Departamento donde se haya llevado a cabo el procedimiento de querella. Véase, 3 LPRA sec. 341e (i). Esta facultad delegada al DACo por la Asamblea Legislativa tienen su motivo en que las agencias carecen del poder coercitivo que ostentan los

tribunales para exigir el cumplimento de sus propias órdenes y resoluciones. *Srio. D.A.C.O. v. Comunidad San José*, Inc., 130 DPR 782, 795 (1992).

Cónsono con lo anterior, el Reglamento de Procedimiento de Procedimientos Adjudicativos del DACo, Reglamento Núm. 8034 del 14 de junio de 2011, dispone en su Regla 30.3 que cuando el querellado en un procedimiento ante esta agencia administrativa incumple con la resolución u orden emitida, el Departamento podrá acudir a un Tribunal. De la misma forma, la Carta Circular Núm. 11 del año fiscal 2010-2011 de la Oficina de Administración de los Tribunales estableció una directriz relativa a la competencia de las peticiones para hacer cumplir órdenes provenientes del DACo con el fin de uniformar este tipo de procedimientos en el poder juncial.

Por otra parte, es sabido que una vez concluye el procedimiento administrativo y la determinación de la agencia adviene final y firme, comienza el procedimiento de ejecución. *Ortiz Matías v. Mora Development Corp.*, 187 DPR 649, 657 (2013). Por ello, nuestro ordenamiento jurídico le provee la alternativa tanto a la parte favorecida como a la misma agencia para acudir al Tribunal para exigir que se ponga en vigor la resolución u orden Íd. En ese sentido, el foro primario "como parte de su poder inherente para reglamentar los procedimientos que se ventilan ante sí, está facultado para poner en vigor y ordenar la ejecución, por la vía procesal ordinaria, de cualquier resolución del DACo, así como implantar cualquier otro remedio que estime pertinente ante el cumplimiento de sus órdenes". *Srio. D.A.C.O. v. Comunidad San José, Inc.,* supra, págs. 811–812.

Cabe mencionar que este procedimiento en el cual se pide la intervención del Tribunal para que se ponga en vigor una resolución de la agencia no es análogo con el procedimiento de revisión judicial. *Industria Cortinera, Inc. v. P.R. Telephone Co.,* 132 DPR 654, 664

(1993). Ambos procesos atienden aspectos distintos, ya que en el proceso de poner en vigor una resolución administrativa, el foro primario no pasa juicio sobre la corrección de la determinación administrativa que está ante sí, sino más bien, lo que tiene a su haber es que se ejerza su cumplimiento. Dicha consideración sobre la corrección de una determinación administrativa se atiende en el proceso de revisión judicial. Íd.

**III.**

Por estar estrechamente relacionados, procederemos a discutir los tres señalamientos de error de manera conjunta. En su recurso, el apelante nos invita a que revisemos la *Sentencia* del TPI mediante la cual el foro primario le ordenó el cumplimiento de la *Resolución* del DACo dictada el 30 de marzo de 2021. Sin embargo, el Consorcio sostiene que ya cumplió con lo ordenado por el dictamen de la agencia adminsitrativa, por lo cual el TPI incidió en su proceder. *Veamos*.

En la presente controversia, el DACo por medio de una determinación que advino final y firme, le ordenó al Consorcio "llevar a cabo las gestiones para [que] las agencias de informe de crédito corrijan la información adversa del historial crediticio de la querellante".[15] La agencia le concedió un término de veinte (20) días para que el Consorcio cumpliera con dicha directriz.[16] Ahora bien, del expediente que esta ante nos, se desprende que el 27 de abril de 2021, el apelante le remitió un correo certificado a la agencia crediticia Trans Union con los documentos para corregir la información del historial de crédito de la señora Ramírez.[17] Del mismo modo,  surge que el 3 de junio de 2021, la señora Marisela Rodríguez, Gerente de Administración del Consorcio sostuvo varias

---

[15] Véase el Apéndice 1, pág. 7.
[16]  Íd.
[17] Véase el Apéndice 9, pág. 27.

comunicaciones por correo electrónico con la señora Ramírez informándole sobre el estatus de las gestiones con las agencias crediticias.[18] Mediante este medio, le comunicó a la señora Ramírez que el Consorcio estaría realizando una segunda gestión con las agencias crediticias, ya que en su primer intento de comunicarse con ellos, hubo una discrepancia en las fechas de los documentos lo cual les obligaba a realizar el trámite nuevamente.[19]

Nótese que, la orden del DACo no especifica el tipo de tarea que el Consorcio se debe realizar para que el aludido historial crediticio de la señora Ramírez quede arreglado. Simplemente se limita a ordenarle al apelante que debe "llevar a cabo gestiones" para repararlo.

A tenor con el análisis antes expuesto, resolvemos que el TPI incidió al emitir su dictamen y por lo tanto corresponde revocar la *Sentencia* apelada y devolver el caso al foro primario para que se lleve a cabo una vista evidenciaria con el propósito de dilucidar si en efecto existe prueba que demuestre si se ha incumplido con la *Resolución* del DACo. Vale destacar, que no estamos adjudicando si el Consorcio cumplió o no con la *Resolución* del DACo, pues le corresponde al TPI atender dicha controversia.

## IV.

Por los fundamentos que expondremos a continuación, ***revocamos*** el dictamen apelado y devolvemos el caso al foro primario para la continuación de los procedimientos conforme a lo aquí dispuesto

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[18] Íd., págs. 31-32
[19] Íd.