# 2004 DTA 113

RECEIVED

OCT 2 5 2004

SERIALS DEPARTMENT
HARVARD LAW SCHOOL LIBRARY

## TRIBUNAL DE CIRCUITO DE APELACIONES
## REGION JUDICIAL DE SAN JUAN, PANEL IV

MARISOL DE LA ROSA RODRÍGUEZ Y ERNESTO OSORIO CORREA POR SÍ
Y EN REPRESENTACIÓN DE LA SOCIEDAD LEGAL DE
GANANCIALES COMPUESTA POR AMBOS
Recurrentes

v.

LA MONTAÑA MOVING & SHIPPING EXPRESS, INC.,
COMPAÑÍA ASEGURADORA, FULANO DE TAL
Recurridos

Núm. KLRA-2002-00658

San Juan, Puerto Rico, a 2 de junio de 2004

Panel integrado por su Presidente, el Juez Ortiz Carrión,
y los Jueces Rivera Román y Negroni Cintrón

Rivera Román, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Los hechos que originan la reclamación de epígrafe guardan relación con un contrato de mudanza y el alegado incumplimiento por la compañía Montaña Moving & Shipping Express, Inc., (en adelante Montaña Moving) contratada para el servicio. La señora Marisol de la Rosa contrató un servicio de mudanza de Puerto Rico al estado de Florida en los Estados Unidos. Parte de la mudanza se extravió y algunos muebles se rompieron. Montaña Moving admitió el extravío de parte de la mudanza, pero sostiene que su responsabilidad asciende al monto del seguro que le compró la señora de la Rosa. Sostuvo la recurrida, además, que las sumas reclamadas son exageradas. La resolución dictada por la Comisión de Servicio Público (en adelante la Comisión) declaró ha lugar la reclamación y concedió tres mil trescientos veintiséis dólares con ocho centavos en concepto de muebles rotos, pago de seguro, gastos, sufrimientos y angustias mentales.

La señora de la Rosa Rodríguez incoó un recurso de revisión contra la determinación de la Comisión en el que sostiene que debió anularse el contrato de seguro suscrito entre las partes, que se le requirió un *quántum* de prueba mayor al que dispone la ley y que los daños sufridos le fueron subestimados.

Evaluado el recurso y por los fundamentos que se expondrán a continuación, resolvemos modificar la determinación de la Comisión en cuanto a las partidas de daños concedidas y los honorarios.

### II

La señora Marisol de la Rosa y su esposo Ernesto Osorio Correa resolvieron mudar su familia de Puerto Rico al estado de Florida en los Estados Unidos. A los fines de realizar la mudanza contrataron los servicios de Montaña Moving. Dicha compañía se dedica al negocio de mudanzas locales e internacionales y tiene licencia vigente en la Comisión.

Un representante de Montaña Moving visitó a la recurrente durante el mes de agosto de 1997 y le sometió un estimado del costo de los servicios.

La recurrente contrató los servicios de mudanza de Montaña Moving para trasladar sus pertenencias y mobiliario de su residencia en Río Piedras a Tampa, en Florida. El precio acordado por los servicios fue de $1,150 y la recurrente pagó, además, un seguro de $62 para un total de $1,212. La señora de la Rosa pagó el monto del contrato según acordado.

Los empleados de Montaña Moving comparecieron a la casa de la señora de la Rosa el 2 de septiembre de 1997 para empacar los muebles grandes. La señora de la Rosa empacó la ropa y otras pertenencias personales en cajas provistas por la recurrida. El contrato identifica los siguientes artículos recogidos por Montaña Moving para la mudanza: cinco piezas de comedor; tres piezas de cuarto de niño; tres piezas de balcón; una cuna; un TV de 25" y su mesa; tres piezas de sala; dos mesas de sala; un espejo; una máquina de coser; un aire

acondicionado y veintitrés cajas. La recurrente aseguró su mudanza por $4,600. El contrato le fue entregado a la recurrente el día que el recurrido recogió la mudanza. (Transcripción, pág. 54.)

Las 23 cajas PBO (*pack by owner*), fueron empacadas por la recurrente en recipientes provistos por la recurrida. Estas fueron aseguradas por $1,500.

La mudanza fue entregada a la recurrente en Tampa seis semanas más tarde, el 27 de octubre de 1997, que resultó ser dos semanas más tarde de lo acordado.

Durante la entrega de la mudanza, la señora de la Rosa informó por escrito a los representantes de Montaña Moving que faltaban cinco cajas (PBO) que, de acuerdo con el inventario, estaban numeradas como artículos 113, 127, 130, 131 y 132. Además, la recurrente identificó en la entrega otros dos muebles rotos, numerados como 115 y 154.

La recurrente sostuvo varias comunicaciones telefónicas con el representante de Montaña Moving en torno a la pérdida sufrida y los muebles averiados durante la mudanza.

La inacción de Montaña Moving provocó que la señora de la Rosa les remitiera una carta el 17 de noviembre de 1997, en la que identificó los bienes muebles extraviados en las cajas perdidas y reiteró su reclamo de que se le entregara la propiedad o se le compensara justamente por ella. En la carta se identificaban artículos perdidos, tales como zapatos, ropa, manteles, vajilla, artículos de cocina, bicicleta y cuadros. Se identificaron en la carta otros muebles que estaban rotos, a saber: silla de balcón, gavetero, mesa de noche, un *mattress*, *head board*, tela del juego de sala, mesa de la máquina de coser y un jarrón decorativo.

La recurrente reiteró su reclamación en una segunda carta de 1 de abril de 1998, en la que valoró los bienes perdidos o dañados y estimó el monto de los daños sufridos $10,374.50. El recurrente no contestó tales cartas.

Como resultado del extravío, la recurrente y su familia sufrieron serios trastornos familiares, que incluyeron la pérdida de ropa, objetos con valor sentimental de la familia, como álbumes de la historia de la hija y album y recordatorios de boda; sentirse desvalido y abandonado en un lugar donde arribó recientemente sin sentir apoyo o interés de la recurrida y, por el contrario, despreocupación por atender sus reclamos. La recurrida no realizó gestiones para aclarar con el Servicio de Aduana la pérdida o reclamación, más allá de una comunicación ligera e inconsecuente. La recurrida no brindaba información de las gestiones que realizaba para resolver el problema. La recurrente tuvo pérdida monetaria del valor de los bienes y sufrió serias angustias mentales.

La señora de la Rosa presentó una querella en la Comisión el 25 de enero de 1999.

Montaña Moving contestó la querella y atribuyó la pérdida de las cajas al Servicio de Aduana Federal que inspeccionó el furgón donde trasladaban la mudanza. Sostuvo, además, que mediante una carta reclamó a la agencia federal los bienes extraviados.

La Comisión concluyó que los actos y omisiones de Montaña Moving causaron daños a la señora de la Rosa y su familia. La Comisión concedió por el valor de las cajas extraviadas $326.08, por los daños a los bienes muebles averiados, rotos o dañados $2,300 y por los sufrimientos, angustias y contratiempos causados a la recurrente $700 para un total de $3,326.08.

Inconforme con la determinación, la recurrente presentó una solicitud de revisión. La recurrente sostiene que la Comisión erró al no anular el contrato de servicios, que se requirió a la recurrente un *quántum* de prueba mayor al requerido en acciones civiles, que los daños sufridos fueron subestimados y que no se concedió honorarios de abogados.

## III

El Art. 20 (a) de la Ley de Servicio Público de Puerto Rico, Ley 109 de 28 de junio de 1996, según enmendada, 27 L.P.R.A. sec. 1107, le reconoce a la Comisión facultad para imponer la concesión de daños.

*"(a) **Cuando la Comisión, luego de celebrada audiencia determinare que cualquiera** tarifa cobrada, **acto realizado u omitido**, o práctica puesta en vigor, ha infringido cualquier orden, fuere injusta o irrazonable, estableciere diferencias o preferencias injustificadas o indebidas o que la tarifa cobrada excede la radicada, publicada y vigente a la fecha en que se prestó el servicio, **podrá ordenar a la compañía de servicio público o porteador por contrato que pague al perjudicado**, dentro del tiempo razonable que se especifique, **el importe de los daños y perjuicios sufridos como resultado de la tarifa, acto, omisión o práctica injusta, irrazonable o ilegal**. La orden que a ese efecto se expida contendrá conclusiones de hechos y la cuantía que ha de pagarse."* (Énfasis suplido).

El Tribunal Supremo, al interpretar el alcance y amplitud del citado Art. 20, reconoció la facultad que tiene la Comisión para imponer el pago de daños en el caso de *Vera v. Pavesi*, 116 D.P.R. 55, 58 (1985)

Somos del criterio que dicho precepto legal [el Art. 20] faculta a la Comisión de Servicio Público a conceder indemnización monetaria a un usuario de una compañía de servicio público, o porteador por contrato, únicamente en aquellos casos en que éste se ve afectado o sufre daños: 1—al ser "*víctima*" de una tarifa, práctica puesta en vigor, acto, u omisión que (a) infrinja cualquier orden de la Comisión, o (b) resulta injusta o irrazonable, o (c) establece diferencias o preferencias injustificadas o indebidas, y 2—cuando le es cobrada una tarifa que excede la radicada, publicada y vigente a la fecha en que se prestó el servicio.

La doctrina jurisprudencial reconoce a la Comisión *expertise* en la concesión de daños cuando la reclamación tiene una relación directa y sustancial con el servicio público que presta la empresa y se requiere aplicar el conocimiento especializado de la agencia para resolver la controversia. *Rovira Palés v. PR Telephone Co.*, 96 D.P.R. 47, 52-53 (1968); *Viajes Gallardo v. Clavell*, 131 D.P.R. 275, 288 (1992).

La concesión de daños por la Comisión ha tomado diversas formas. En el caso de *Viajes Gallardo v. Clavell, supra*, se validó el resarcimiento de daños materiales, contratiempos, angustias y sufrimientos mentales cuando una agencia de viaje no provee un alojamiento seguro.

Las determinaciones de las agencias administrativas especializadas merecen gran deferencia y respeto. *Misión Industrial de Puerto Rico v. J.C.A.*, 145 D.P.R. 908 (1998); *Metropolitana S.E. v. A.R.P.E.*, 138 D.P.R. 200 (1995).

La Ley de Procedimiento Administrativo Uniforme, Ley 170 de 12 de agosto de 1988, 3 L.P.R.A. sec. 2102 *et seq.* (en adelante L.P.A.U.), en su sección 4.5, 3 L.P.R.A. sec. 2175, establece los límites de la revisión judicial de decisiones administrativas y reitera el principio de que las determinaciones de hechos de las agencias serán sostenidas por el Tribunal si se basan en evidencia sustancial que obre en el expediente administrativo. *Hilton Hotels v. Junta de Salario Mínimo*, 74 D.P.R. 670 (1953).

Las conclusiones de derecho de los organismos administrativos que no involucren interpretaciones efectuadas dentro del ámbito de la especialización de la agencia concernida, son revisables en toda su extensión. *Rivera v. A. & C. Development*, 144 D.P.R. 450 (1997).

El Tribunal de Apelaciones podrá intervenir en la apreciación de la prueba cuando la agencia recurrida, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; o cuando, por el contrario, la agencia administrativa, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su

decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, la agencia administrativa livianamente sopesa y calibra los mismos. *Pueblo v. Ortega Santiago*, 125 D.P.R. 203 (1990); *Ramírez v. Policía de P.R.*, 158 D.P.R. ___ (2002), **2003 J.T.S. 3**.

Varios planteamientos en la apelación guardan relación con la consideración de la evidencia desfilada y el *quántum* requerido por la Comisión para establecer hechos.

La L.P.A.U. pretende brindar a los ciudadanos un servicio público de excelencia y eficiencia. Además, pretende ordenar los procesos administrativos decisionales y posibilitar al ciudadano mecanismos efectivos para conocer las determinaciones de las agencias y cuestionarlas cuando no estén conformes. 3 L.P.R.A. sec. 2101, *et seq.*

La Sec. 3.13 de la LPAU, 3 L.P.R.A. sec. 2163, dispone las normas y aspectos del derecho probatorio que serán aplicadas durante las vistas administrativas:

*"Vista – Procedimiento:*

*(a) ...*

*(b) ...*

*(c) El funcionario que presida la vista podrá excluir aquella evidencia que sea impertinente, inmaterial, repetitiva o inadmisible por fundamentos constitucionales o legales basados en privilegios evidenciarios reconocidos por los tribunales de Puerto Rico.*

*(d) ...*

*(e) Las Reglas de Evidencia no serán aplicables a las vistas administrativas, pero los principios fundamentales de evidencia se podrán utilizar para lograr una solución rápida, justa y económica del procedimiento. (Énfasis nuestro)*

## IV

Montaña Moving fue negligente en el cuido y manejo de la mudanza de la señora de la Rosa y no cumplió con su obligación de proteger los bienes que recibió para custodia y traslado. El recurrido tenía la obligación de examinar la integridad de la mudanza y requerir al Servicio de Aduana explicación inmediata en torno a la desaparición de bienes. La compañía Montaña Moving se enteró del extravío de las cajas cuando la señora de la Rosa le reclamó durante la entrega de la mudanza. Además, la ruptura de otros muebles implica falta de cuidado y protección en el empaque o no dar la debida protección a los artículos y ello evidencia conducta negligente.

La Comisión de Servicio Público concluyó correctamente que Montaña Moving era responsable y responde en daños y perjuicios por los sufrimientos y angustias que provocó a la recurrente. Al estimar los daños ocasionados a la familia, erró la agencia administrativa, pues subestima aspectos esenciales de los daños causados que debemos corregir.

Resulta evidente el malestar, incomodidad, ansiedad y preocupación que ocasiona a una familia recibir una mudanza incompleta y la parte que recibieron tenía varios muebles rotos. Las gestiones realizadas por la recurrente con la compañía de mudanza eran infructuosas y trasluce una desidia notable de la recurrida en la atención de la queja y en la búsqueda de explicaciones del porqué de la pérdida de la mudanza. Las cartas dirigidas por la recurrente a la recurrida ocurren en un intervalo del mes de noviembre hasta el siguiente mes de

abril, sin que se presentara en el récord contestación alguna más allá de una explicación superficial de que alegaban que era el Servicio de Aduana el responsable de la pérdida de los bienes.

Lo que olvida Montaña Moving es que era su obligación y responsabilidad contractual realizar la mudanza y responder por las pérdidas de la misma.

De igual forma es responsable, al amparo del Art. 20 de la Ley de la Comisión, por los daños y perjuicios ocasionados al ciudadano que lo contrata de buena fe.

La resolución de la Comisión repite, en varias ocasiones, que la señora de la Rosa no presentó prueba corroborativa en apoyo de su reclamo y hace alusión a la ausencia de documentos que corroboren su testimonio. Pierde de vista la Comisión que el derecho probatorio establece como norma que para establecer un hecho no se requiere certeza matemática y es suficiente el testimonio de un testigo que merezca credibilidad sin necesidad de prueba corroborativa. 32 L.P.R.A. Ap. IV, R. 10 (c) y (d). Requerir a una familia que localice cheques, recibos de compra y evidencia documental de cómo se adquirieron las cosas extraviadas en circunstancias en que han tenido problemas con la mudanza, es irrazonable.

Montaña Moving contrató realizar una mudanza y tenía la obligación y responsabilidad de manejo y cuido de la mudanza y trasladarla de forma segura y eficaz. No hacerlo implica incumplimiento del contrato y responsabilidad por los daños ocasionados a la familia de la Rosa.

Del examen de las partidas concedidas por la Comisión, entendemos que se subestima la correspondiente a los daños y perjuicios. Recuérdese que se trata de una familia que recién comenzaba una vida en la ciudad de Tampa, Florida, y aguardaba, para establecer su hogar, los muebles cuyo cuido había encomendado a Montaña Moving. El extenso testimonio de la señora de la Rosa, transcrito y sometido ante nuestra consideración, refleja y evidencia una familia afectada en su ajuste en la nueva ciudad, ansiosa por la pérdida de sus pertenencias, por la ausencia de explicaciones y la evidente responsabilidad de la compañía de mudanza. Algunos de los objetos extraviados tienen un enorme valor sentimental e irremplazable. Nos referimos a objetos, tales como el álbum de boda, álbum y fotos que recogen la historia de sus hijos. Objetos tangibles como un libro de costura especializado, mesas, sillas y otros muebles.

Por los sufrimientos y angustias sufridos por la recurrente y causados por Montaña Moving, se modifica la partida concedida por la Comisión de $700 y se concede la suma de $7,000.

Confirmamos las otras partidas concedidas y las partidas denegadas.

La recurrente firmó un seguro que protegía el valor de los bienes en cada caja por la suma de $65.20. El contrato está firmado por las partes y la recurrente aceptó en su testimonio ante la Comisión que le fue entregado el día en que recogieron la mudanza. El contrato era simple, estaba escrito en los idiomas inglés y español y no vemos razón por la cual anularlo. La recurrente aseguró cada caja por la suma de $65.20 y tiene derecho a que se le pague el seguro correspondiente a cinco cajas extraviadas para un total de $326.10.

La Comisión concede una importancia desproporcionada a la existencia del seguro entre las partes. Si bien no concluimos que debemos anular el contrato sometido entre las partes, queda claro para nosotros que la responsabilidad adicional de Montaña Moving se relaciona con los sufrimientos, inconvenientes y angustias ocasionados a la familia.

La Comisión concedió correctamente una partida por los daños ocasionados a los muebles descritos en el contrato y en el *"Household Goods Descriptive Inventory"* que asciende a $2,300.

Finalmente, el recurrente reclama la imposición de honorarios. La LPAU reconoce a las agencias administrativas poder para imponer honorarios cuando medie una conducta temeraria tal y como se conceden en los casos que dispone la Regla 44 de Procedimiento Civil. 3 L.P.R.A. sec. 2170(a).

En consideración a los hechos descritos que evidencian una actitud temeraria, contumaz y despreocupada del recurrido, imponemos la suma de $1,000 de honorarios. 3 L.P.R.A. 2170 (a); 32 L.P.R.A. Ap. III, R. 44.1. En tal adjudicación consideramos el comportamiento despreocupado de la recurrida antes de radicarse la querella ante la Comisión y su actitud durante el litigio. *Raoca Plumbing v. TransWorld*, 114 D.P.R. 464 (1993).

Examinado el expediente y considerada la transcripción de evidencia sometida por las partes, resolvemos modificar la resolución de la Comisión a los únicos fines de aumentar la partida de daños concedida a la recurrente y la imposición de honorarios. Se concede a la recurrente la suma de $7,000 en daños y perjuicios y $1,000 de honorarios de abogado.

Por los fundamentos anteriormente expuestos, se expide el auto y se modifica la resolución recurrida para aumentar la partida de $700 concedida a la recurrente como compensación por los sufrimientos y angustias mentales a la suma de $7,000 y para concederle $1,000 en concepto de honorarios de abogado, y así modificada se confirma.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General